UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| S.W., *on behalf of J.J., a minor*, <br> *Plaintiff*, <br> <br> *vs.* <br> <br> CAROLYN W. COLVIN, <br> *Acting Commissioner of the* <br> *Social Security Administration*, <br> *Defendant*. | 1:13-cv-1976-JMS-DML |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff S.W.,[1] on behalf of J.J., a minor, appeals the denial of J.J.'s application for supplemental security income ("SSI") benefits. S.W. applied for benefits on J.J.'s behalf on January 3, 2011, alleging a disability onset date of August 1, 2006. [Filing No. 9-5 at 2.] The claim was initially denied in July 2011 and upon reconsideration. [Filing No. 9-2 at 19.] Administrative Law Judge Joseph L. Brinkley (the "ALJ") held a hearing on May 17, 2012, and issued a decision on August 9, 2012, concluding that J.J. was not disabled. [Filing No. 9-2 at 19-33.] The Appeals Council denied a request for review, rendering the ALJ's decision the final decision of the Defendant, Commissioner of the Social Security Administration ("Commissioner") for the purposes of judicial review. 20 C.F.R. § 404.981. S.W. filed this action on behalf of J.J. under 42 U.S.C. § 405(g), requesting that the Court review the ALJ's denial. [Filing No. 1.]

**I.**
**APPLICABLE STANDARD OF REVIEW**

"Social security disability benefits are designed for disabled workers, but low-income parents or guardians may obtain them on behalf of disabled children as well." *Keys v. Barnhart*, 347

---

[1] To protect the minor claimant's privacy pursuant to Federal Rule of Civil Procedure 5.2, the Court will also refer to the plaintiff pursuing this action on J.J.'s behalf by her initials.

F.3d 990, 991 (7th Cir. 2003). For a child to be considered disabled, it must be shown that the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

"[S]ince disabled children generally do not have a work history, the structure of the disability program for them is necessarily different from that for adults, except in cases in which the child has a 'listed impairment,' that is, an impairment that would entitle the adult to disability benefits without any further inquiry into his ability to perform his past work or some other work; the child is treated the same in such a case." *Keys*, 347 F.3d at 991-92 (citing 20 C.F.R. § 416.924(d)). If the child is "not so seriously disabled as is implied by being found to have a listed impairment, then it must be determined whether [the child] is nevertheless severely limited in functioning in specified areas of life activity such as concentration and communication." *Keys*, 347 F.3d at 992.

To determine whether the child is disabled, the ALJ considers all relevant evidence and the combined effect of any impairments on the child's overall health and functioning. 20 C.F.R. § 416.924(a). The regulations set forth a three-step process for evaluating child disability claims. 20 C.F.R. § 416.924(a).

At Step One, if the child is doing substantial gainful activity, as defined by the regulations, the child is not disabled and the evaluation stops. 20 C.F.R. § 416.924(a)-(b). If the child is not doing substantial gainful activity, the evaluation proceeds to Step Two. 20 C.F.R. § 416.924(a).

At Step Two, the ALJ considers the child's physical or mental impairments to see if the child has an impairment or combination of impairments that is severe. 20 C.F.R. § 416.924(a). If

the impairment or impairments are not severe, the child is not disabled and the evaluation stops. 20 C.F.R. § 416.924(a). If the impairment or impairments are severe, the evaluation proceeds to Step Three. 20 C.F.R. § 416.924(a).

At Step Three, the ALJ considers whether the child has an impairment or impairments that meets, medically equals, or functionally equals a listing. 20 C.F.R. § 416.924(a). If the child has such an impairment and it meets the duration requirement, the child is disabled. 20 C.F.R. § 416.924(a). If the child does not have such an impairment, or if it does not meet the duration requirement, the child is not disabled. 20 C.F.R. § 416.924(a).

A child's impairments will functionally equal a listing if they result in either a "marked" limitation in at least two of six enumerated domains of functioning or an "extreme" limitation in at least one of the domains. *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (citing 20 C.F.R. § 416.926a). The six domains are as follows: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a. A "marked" limitation interferes "seriously" with a child's ability to initiate, sustain, or complete activities in the domain, and an "extreme" limitation interferes "very seriously." 20 C.F.R. § 416.926a(e)(2).

This Court's role in reviewing a disability decision is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision

must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Moreover, "[a]n ALJ may not select and discuss only that evidence that favors [his] ultimate conclusion, but must articulate, at some minimum level, [his] analysis of the evidence to allow the [Court] to trace the path of [his] reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the denial of benefits. Otherwise, the Court must generally remand the matter back to the SSA for further consideration; only under rare circumstances can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.
## RELEVANT BACKGROUND[2]

J.J. was nine years old when an application for SSI benefits was filed on his behalf in January 2011. [Filing No. 9-5 at 2.] The application alleges a disability onset date of August 1, 2006. [Filing No. 9-5 at 2.] J.J. has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD"). [*See, e.g.*, Filing No. 9-9 at 18.]

Using the sequential evaluation set forth by the SSA, the ALJ issued a decision on August 9, 2012, finding as follows:

- At Step One, the ALJ concluded that J.J. had not engaged in substantial gainful activity since the application date. [Filing No. 9-2 at 22.]

---

[2] The briefs regarding S.W.'s request for review detail facts about medical treatment that J.J. has received for behavioral issues. [Filing No. 11 at 4-7.] The Commissioner does not dispute the facts presented. [Filing No. 14.] Because those facts implicate sensitive and otherwise confidential medical information concerning J.J., the Court will simply incorporate the facts by reference herein and articulate material facts as needed to resolve the parties' arguments.

- At Step Two, the ALJ concluded that J.J. had the following severe impairments: asthma, ADHD, and ODD. [Filing No. 9-2 at 22.]

- At Step Three, the ALJ concluded that J.J. did not have an impairment, either singly or in combination, that met or medically equaled the severity of a listed impairment. [Filing No. 9-2 at 22.] The ALJ considered Listings 103.03 (Asthma) and 112.11 (ADHD). [Filing No. 9-2 at 22.]

- The ALJ further determined that J.J. did not have an impairment or combination of impairment that functionally equals the severity of a listed impairment. [Filing No. 9-2 at 22-33.] Specifically, the ALJ concluded that J.J. had either a less than marked limitation or no limitation in each of the six functional domains. [Filing No. 9-2 at 27-33.]

- Because of these findings, the ALJ concluded that J.J. was not disabled. [Filing No. 9-2 at 33.]

[Filing No. 9-2 at 19-33.]

S.W. requested that the Appeals Council review the ALJ's decision, but that request was denied on November 5, 2013. [Filing No. 9-2 at 4.] That decision is the final decision of the Commissioner for purposes of judicial review, and S.W. now seeks relief from this Court. [Filing No. 1; Filing No. 11.]

## III.
### DISCUSSION

S.W. argues that the ALJ's decision should be reversed for three reasons. First, she contends that the ALJ erred by not soliciting additional information from J.J.'s treating physician, despite an admitted lack of information. [Filing No. 11 at 11-13.] Second, she argues that the ALJ

erroneously rejected evidence showing that J.J. had not medically improved after ADHD medication. [Filing No. 11 at 14-15.] Third, she contends that the ALJ erred by concluding that J.J. did not functionally equal Listing 112.11 (ADHD), despite a medical expert's testimony that he did. [Filing No. 11 at 14-15.] Because the Court concludes that S.W.'s second and third arguments require reversal and remand, the Court will address those first.

### A. Contrary Evidence

S.W. argues that the ALJ erred by ignoring evidence contrary to his conclusion that J.J. was not disabled. [Filing No. 11 at 15.] Specifically, S.W. contends that the ALJ cited evidence of J.J.'s initial improvement after ADHD medication but ignores the evidence of subsequent troublesome behavior, including suicidal gestures and suspensions at school. [Filing No. 11 at 15.]

The Commissioner responds that the ALJ's decision is supported by substantial evidence. [Filing No. 14 at 8-10.] She emphasizes that S.W. "does not dispute that [J.J.] showed significant improvements after starting medication." [Filing No. 14 at 10.] The Commissioner contends that the behavioral problems that S.W. cites "did not manifest themselves in the domain of attending and completing tasks" as it pertains to the functional equivalence of Listing 112.11 (ADHD). [Filing No. 14 at 10.] Thus, the Commissioner argues that the ALJ considered the evidence to which S.W. points "but found that, on balance, J.J.'s limitations were less than marked." [Filing No. 14 at 14.]

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). "The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985).

"Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). When an ALJ ignores contrary evidence, "it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence" and "remand is required." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

S.W. does not dispute that "the evidence shows that within the first few months after beginning medication for ADHD, J.J. did show strong improvements in behavior and schoolwork." [Filing No. 11 at 14.] She contends, however, that the ALJ's opinion ignores evidence that after that initial improvement, "J.J.'s condition severely deteriorated, even to the point that he displayed suicidal gestures on several occasions, and was regularly in trouble at school resulting in either suspensions or in-school suspensions." [Filing No. 11 at 14.]

In support of her argument, S.W. cites medical records from J.J.'s treatment at Midtown Community Mental Health Center ("Midtown") in the months preceding the ALJ's hearing in May 2012. [Filing No. 9-9 at 2-22 (treatment records from November 8, 2011 to April 17, 2012).] Those records detail an incident on January 4, 2012, where J.J. became "very angry" and "went into the bathroom and wrapped a cord around his neck" before his cousin found him. [Filing No. 11 at 14 (citing Filing No. 9-9 at 7).] Although J.J. later denied having a plan to harm himself, the medical professionals treating J.J. concluded that his "irritability and defiance are increasing" and that "when he gets 'all mad' he will take it out on himself." [Filing No. 9-9 at 7; *see also* Filing No. 9-9 at 8 ("J.J. appears to have had an increase in anger, defiance, and aggression. He does not

appear to be utilizing his coping skills.").][3] The Midtown records also indicate that J.J. was fighting at school and frequently serving in-school detention for "very disobedient and disruptive behavior" during the months preceding the ALJ's hearing. [Filing No. 9-9 at 10; Filing No. 9-9 at 15; Filing No. 9-9 at 17 (noting that during January and February 2012, J.J. had been suspended twice and served in-school suspension two to three times weekly).]

The ALJ's opinion makes no mention of J.J.'s self-harming behavior or increasing irritability and defiance in the months preceding the hearing. Instead, the ALJ cites the Midtown records to support his non-disability finding, noting that J.J. "attended social group sessions" and "actively participated in the development of treatment plans." [Filing No. 9-2 at 25 (citing Filing No. 9-9 at 2-22 (Exhibit 10F)).]

The Court concludes that the ALJ's opinion cherry-picks facts that support his finding of non-disability and ignores material evidence that may support a disability finding. While J.J.'s initial improvement on ADHD medication is undisputed, [*see, e.g.*, Filing No. 9-6 at 33 (January 2011 letter from teacher detailing J.J.'s improvement after ADHD medication); Filing No. 9-7 at 4-5 (February 2011 medical report from Dr. Albert Singh, noting J.J.'s improvement on ADHD medication); Filing No. 9-7 at 8- (February 2011 consultative exam report from Dr. Bonnie Pisano, noting that ADHD medication has had "profound results")], it is also beyond dispute that after that initial improvement, in the months preceding the ALJ's May 2012 hearing, J.J. experienced a significant behavioral regression that the ALJ completely ignores in his opinion. [*See* Filing No. 9-9

---

[3] The Midtown records indicate an additional incident where J.J. "made another suicidal gesture" that S.W. saw, but the Court has not relied on this evidence, given that the Commissioner points out that J.J. does not challenge the ALJ's adverse credibility finding regarding S.W.'s reporting. [Filing No. 14 at 12-13.]

at 2-22 (Midtown treatment records from November 8, 2011 to April 17, 2012).] Instead of addressing this contrary evidence and explaining why it does not impact his conclusion, the ALJ attempts to positively spin J.J.'s behavior during that time to support his non-disability finding. [Filing No. 9-2 at 25 (noting that J.J. "attended social group sessions" and "actively participated in the development of treatment plans") (citing Filing No. 9-9 at 2-22 (Exhibit 10F)).] This egregious example of cherry-picking requires reversal. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) ("Without even a mention, we are left to wonder whether the [favorable evidence] was even considered."); *see also Golembiewski*, 322 F.3d at 917 (When an ALJ ignores contrary evidence, "it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence" and "remand is required.").

### B. Functional Equivalence and Harmless Error

S.W. argues that the ALJ erred by concluding that J.J. did not functionally equal Listing 112.11 (ADHD). [Filing No. 11 at 16-17.] She points to the opinion of Dr. Lawrence Hagerman, an impartial medical expert, who testified that J.J. functionally equals Listing 112.11 because he has marked impairments in the second domain (attending and completing tasks) and the fifth domain (self-care). [Filing No. 9-2 at 74-77.]

The Commissioner argues that at most, any error in the ALJ's functional equivalence analysis was harmless because the evidence at issue supports a finding of marked limitations in one domain, but functional equivalence requires marked limitations in two domains. [Filing No. 14 at 13-15.]

A child's impairments will functionally equal a listing if they result in either a "marked" limitation in at least two of six enumerated domains of functioning or an "extreme" limitation in at least one of the domains. *Buckhanon*, 368 F. App'x at 679 (citing 20 C.F.R. § 416.926a). A

"marked" limitation interferes "seriously" with a child's ability to initiate, sustain, or complete activities in the domain, and an "extreme" limitation interferes "very seriously." 20 C.F.R. § 416.926a(e)(2).

The harmless error doctrine is "applicable to judicial review of administrative decisions." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Under harmless error review, the Court can affirm the ALJ's decision "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record." *Id.*, *see also Schomas v. Colvin*, 732 F.3d 702, 707-08 (7th Cir. 2013).

At the hearing, Dr. Hagerman, an independent medical expert, testified that J.J. functionally equals Listing 112.11 (ADHD) because he has marked impairments in the second domain (attending and completing tasks) and the fifth domain (self-care). [Filing No. 9-2 at 74-77.] Dr. Hagerman specifically referenced the January 2012 incident where J.J. wrapped a cord around his neck as evidence of the marked impairment in those two domains. [Filing No. 9-2 at 74-77.] When the ALJ questioned whether that incident could be evidence of a marked impairment in the second domain, Dr. Hagerman specifically noted that it was evidence of impulsivity, showing a marked impairment in the second domain. [Filing No. 9-2 at 76.] Dr. Hagerman also cited that incident as evidence of J.J.'s marked impairment in the fifth domain, since it indicates "significant issues with the ability to care for himself, and not hurt himself." [Filing No. 9-2 at 77.]

In his decision, the ALJ did not give Dr. Hagerman's opinion controlling weight because J.J.'s "conditions have significantly" improved with medication. [Filing No. 9-2 at 26.] The Court has already rejected the ALJ's analysis regarding J.J.'s alleged improvement because the ALJ did not address the contrary evidence of self-harm and J.J.'s increase in defiant behavior in the months

preceding the hearing. Thus, the ALJ's treatment of Dr. Hagerman's opinion, which is exclusively based on the ALJ's faulty analysis, must also be rejected.

In sum, Dr. Hagerman testified that J.J. had marked impairment in two domains and functionally equaled Listing 112.11 (ADHD) based on evidence that the ALJ ignored in his opinion. [Filing No. 9-2 at 74-77.] The ALJ decided not to give controlling weight to Dr. Hagerman's opinion on functional equivalence based on an analysis that the Court has already found to be flawed. For these reasons, the Court rejects the Commissioner's harmless error argument.

### C. ALJ Duty to Solicit Information

S.W. also argues that the ALJ erred because he failed to solicit additional information from J.J.'s treating physician, Dr. John Young. [Filing No. 11 at 11-13.] S.W. points to a duty she contends that the ALJ has to recontact medical sources when evidence is inadequate for a determination. [Filing No. 11 at 11-13.]

In response, the Commissioner contends that the ALJ did not have such a duty because the record was not inadequate. [Filing No. 14 at 5-6.] The Commissioner also points out that J.J. was represented by counsel at the hearing, and that counsel did not suggest that the ALJ should recontact Dr. Young. [Filing No. 14 at 5-6.]

The ALJ afforded little weight to Dr. Young's medical opinion after concluding that his treatment notes were "extremely limited in information." [Filing No. 9-2 at 25.] S.W. alleges that 20 C.F.R. § 416.912(e) required the ALJ to recontact Dr. Young because the ALJ believed that Dr. Young's opinion was insufficient. [Filing No. 11 at 12 (citing Filing No. 9-2 at 25).] While a prior version of 20 C.F.R. § 416.912(e) (2012) addressed when an ALJ needed to recontact medical sources, that regulation was amended to eliminate that section before J.J.'s hearing. *See* 20 C.F.R. § 404.1512(e) (effective March 26, 2012); *see also* Social Security Administration Regulations,

"How We Collect and Consider Evidence of Disability, 77 FR 10651-01; *see also* CCH Unemployment Insurance News, "SSA eliminates requirement to recontact treating source to resolve medical record conflicts," http://hr-cch.com/news/uiss/032612a.asp (visited September 17, 2014).

Both parties ignore the amendment to 20 C.F.R. § 404.1512(e) and, thus, do not address whether the ALJ should have applied the version of the regulation in effect at the time of J.J.'s application (which placed a duty on the ALJ to recontact a treating source who provided an insufficient opinion) or the version of the regulation in effect at the time of the ALJ's hearing and opinion (which eliminated that duty in most circumstances). Because the Court has already concluded that the ALJ's decision must be reversed and remanded, the Court will not further address the parties' arguments regarding the ALJ's failure to recontact Dr. Young. Instead, if S.W. finds it appropriate to raise this issue again on remand, the parties and the ALJ should specifically address which version of 20 C.F.R. § 404.1512(e) applies.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying S.W.'s application for SSI benefits on behalf of J.J. and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

September 18, 2014

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov